## Shick v. Norristown-Penn Trust Company, Appellant.

Argued January 3, 1944. Before MAXEY, C. J., DREW, LINN, STERN, PATTERSON, STEARNE and HUGHES, JJ.

*Desmond J. McTighe,* of *Fox & McTighe,* and *M. Paul Smith,* for appellant Nos. 11 and 12 and defendant appellee Nos. 29 and 30.

*Edwin C. Emhardt,* with him *A. Archer Cross* and *Robert P. Shick,* in propria persona, for plaintiff appellee Nos. 11 and 12, and appellant Nos. 29 and 30.

OPINION BY MR. JUSTICE DREW, March 20, 1944:

These cross-appeals arose out of two actions in assumpsit instituted by plaintiff, Robert P. Shick, against defendant, the Norristown-Penn Trust Company—one, for commission as counsel fees alleged to be due under a written contract; and the other, for deficiency of income from a trust fund claimed to be payable under the same agreement. The cases were twice tried together, and finally resulted in directed verdicts for plaintiff in the sums of $144.05 and $2,754.37, respectively. From the judgments entered on the verdicts after the learned court below overruled motions for a new trial and judgment n. o. v., both plaintiff and defendant took separate appeals in each case.

Reading the record in the light most favorable to plaintiff, as we must under these circumstances, the following facts appear: Francis G. Stinson died December 29, 1904, and by his will, which was duly probated in

Montgomery County, he bequeathed sums aggregating
$100,000 to a trustee to be nominated by the life benefici-
aries of the trust (testator's two nieces, and two nephews,
attorneys, one of whom is plaintiff in these actions), sub-
ject to the approval of the orphans' court. These bene-
ficiaries nominated the Penn Trust Company (now, by
merger, the Norristown-Penn Trust Company), defend-
ant, and its appointment as trustee by the orphans' court
immediately followed. At the same time, defendant, in
consideration of its nomination and appointment, en-
tered into a written contract with the beneficiaries of the
trust. The present actions are founded upon this agree-
ment, the pertinent portion of which is as follows: "It is
hereby agreed by and between the said parties to this
agreement that in consideration of the said parties of the
second part [beneficiaries] having the said party of the
first part [defendant] appointed Trustee for each of
their respective trust funds that the said party of the
first part shall charge the said parties of the second part
commission on the income arising from said trust at the
rate of 5% per annum and that they will allow C. Henry
Stinson [one of the life beneficiaries] his substitute or
successor as Attorney for the said parties of the second
part 3½% of the income, as counsel fees so that the
actual commission to be received by the parties of the
second part [obviously intended to be the party of the
first part] shall be 1½% of the income . . . It is further
agreed that the said party of the first part shall have the
entire trust funds invested in securities bearing interest
of not less than 5% per annum, and it is further agreed
by the said party of the first part that the said trust
funds shall be considered invested at the above rate con-
tinuously from the date of the payment of the principal
sum of said legacies until such time as the principal sum
of said legacies shall be paid either to the issue of said
parties of the second part or to the Aged Woman's Home
so that at no time from the date of the payment of the
funds to the said party of the first part shall the fund

be idle but shall always be invested in securities at the rate of not less than 5% per annum."

Since the execution of the contract, three of the life beneficiaries have died and the principal of their interests in the trust fund have been distributed. The sole survivor is plaintiff, who is a beneficiary of the trust in the sum of $30,000. As far as the payment of commission as counsel fees is concerned, defendant, in conformity with the agreement, paid to C. Henry Stinson 3½% of the income from the time of the execution of the contract until his death in December, 1926. No share of the commissions was paid to anyone from December, 1926, to December, 1930, when it was orally agreed by plaintiff and defendant that the former, as successor attorney to C. Henry Stinson, should receive 2½% of the income of the trust. This arrangement was continued until November 27, 1939, when it was terminated by defendant, without the consent of plaintiff, and no commission has been paid to him since.

As to the investment of the trust funds by defendant, the evidence shows that the funds were placed in individual mortgages, bearing interest at the rate of 5% or better from 1905 to May 1, 1925, at which time they were reinvested, without plaintiff's knowledge, in defendant's mortgage pool. Certificates, on the face of which appeared the following: "This certificate bears interest from date and is payable semi-annually on May 1 and November 1st at the rate of 6% per annum," were issued by defendant to itself as trustee of the Stinson Estate, showing the investment of the funds of the estate in the pool. On July 22, 1930, defendant as trustee, without the knowledge or consent of plaintiff, delivered to itself and cancelled the participation certificate which evidenced the investment of the $30,000 trust fund of which plaintiff was beneficiary, and thereafter it, in its fiduciary capacity, had no evidence showing its participation in the pool, except a card; nor was any provision then made for any specific rate of interest. In 1933 the rate of interest on the participation was reduced below

5%. Plaintiff on April 13, 1938, sent to defendant a letter objecting to the reduction and requested its construction of that part of the agreement relating to the income to be paid to him, and thereafter a number of conferences followed.

On April 1, 1939, defendant filed its first and partial account in the Stinson Estate in the orphans' court, to which plaintiff filed exceptions, whereby he sought, among other things, to have defendant surcharged, under the provision of the contract here in question, for the deficiency between the amount paid to him and the income the fund should have produced if invested at 5%, and also for fees paid to an attorney, other than plaintiff, out of the principal of the trust estate. The court held that it was without jurisdiction to determine a controversy arising under this collateral agreement under which plaintiff was seeking a money judgment, but allowed, however, the counsel fees there questioned. On appeal, the learned Superior Court (*Stinson's Estate,* 143 Pa. Superior Ct. 513, 18 A.(2d 678) sustained the conclusion of the court below as to the lack of jurisdiction, but held that the court was in error in allowing counsel fees under the circumstances. There, the Superior Court, speaking through BALDRIGE, J., said (p. 515) : "The main question before us, therefore, is: Does the orphans' court have jurisdiction over this claim arising out of a contract between the trust company and the beneficiaries of a trust? The answer is in the negative . . . If this trustee saw fit to bind itself beyond the performance of its legal duties as a testamentary trustee and defaulted, it is not within the authority of the orphans' court to give relief to the one aggrieved. The contract did not affect the administration of the trust or the settlement of the trustee's account. The accountant herein stands in a dual capacity. It is a trustee under the will and is a party to a contract with the beneficiaries under the will . . . [p. 516] The exceptant insists that under the written agreement the trustee must account in the orphans' court for the deficiency between the

income the accountant collected and the amount it agreed to pay without regard to the amount it actually received. If the exceptant is entitled to a recovery it is not for a breach of the testamentary trust but for violation of the written agreement. The court of common pleas is, therefore, the appropriate tribunal for the exceptant to press his claim. We might state that this type of contract since the Act approved April 22, 1937, P. L. 349, 378, §1021-A, 7 PS §819, is unlawful. The exceptant objected also to awarding a fee of $200 to counsel for the trustee, which was charged to the principal of the trust estate. The agreement between the trust company and the beneficiaries provided that the trustee should charge a commission of 5% on the income arising from the trust, which expressly included payment of counsel fees. We do not doubt that the sum of $200 was a reasonable amount for the services performed by the attorneys for the trustee, but under the terms of the agreement the trust company bound itself to assume this obligation. Attorneys' fees for services rendered for the personal benefit of a trustee are not chargeable to an estate."

Following this decision of the Superior Court, plaintiff brought the present actions on the agreement with which we are here concerned in the court of common pleas. In the one suit, he sought to recover, with interest, counsel fees at the rate of 3½% on the following:—income of the trust fund for the years 1927 to 1930, inclusive; the difference between the amount of income the fund should have earned during the years 1933 to 1939, inclusive, had it been invested in securities paying 5%, and the amount it actually earned during those years; and income on the fund for the years 1940, 1941 and the first half of 1942 at the rate of 5%. In the other action, plaintiff claimed damages for the deficiency in the income from the trust, with interest, i.e. the difference between the amount of income the fund should have earned if invested at 5% during the years 1932 to and including 1941, and the first half of 1942, less the trus-

tee's commission of 1½%, and the actual income derived during those years, less such trustee's commission.

The jury, in the one action, returned a verdict in favor of plaintiff for $144.05, commission as attorney's fees, which sum was 3½% of $3,750—(the amount the trust fund of $30,000 should have earned during 1940, 1941 and the first half of 1942, if invested at 5% as the contract required), plus interest; and, in the other, it awarded plaintiff $2,754.37, as the deficiency in earnings of the trust (being the difference between 4%, which was the actual income earned, and 5%, which should have been earned had the $30,000 been invested in compliance with the contract provisions, for the 7½ years from 1935 to and including the first half of 1942— $2,250), plus interest.

Plaintiff contends that the court below erred in applying the Statute of Limitations to the balance of his claims in that (1) the statute was not properly pleaded, and (2) in any event, it does not apply to claims of a beneficiary against a testamentary trustee. Defendant argues, however, that the statute is applicable, but contends that the court fell into error in allowing any recovery whatever to plaintiff and should have entered judgment n. o. v., because, inter alia, (1) there is a patent mistake in the agreement with reference to the use of the expressions "party of the first part" and "parties of the second part", and because of this fact a proper construction shows that it was the parties' intention that the trustee agree to use 3½% of its commission on income to pay for its attorney as trustee (not for an attorney for the beneficiaries), that plaintiff was not employed by defendant during the period from 1927 to 1930, inclusive, that he was paid in full at the rate of 2½%, which plaintiff agreed to accept, for the years 1933 to 1939, inclusive, and that he was justifiably discharged in 1939 because of his hostile and adverse interest; and (2) that as to the income of the trust, since the investment in the pool as originally made was in accordance with the agreement in that the fund yielded 5% or better, there was no

breach of the contract by a mere reduction of the interest received by the trustee.

We are convinced that there is no merit to the contention of plaintiff that the Statute of Limitations was not properly pleaded by defendant. Paragraph 6 of both affidavits of defense specifically pleaded the statute and, therefore, the court below was correct in holding that all claims of plaintiff arising prior to 1935 were barred, since they arose more than six years before these actions were brought. Furthermore, we cannot agree that the statute does not apply to the claims of a beneficiary against a trustee under these circumstances, since the suits arise out of a contract between the trustee and the beneficiaries which is entirely separate and apart from the trust created by the will of Francis G. Stinson, and as said in *Stinson's Estate,* supra: "The contract did not affect the administration of the trust or the settlement of the trustee's account."

Nor can we concur in the argument of defendant that judgment n. o. v. should have been entered in its favor in both actions. As to the claim for attorney fees, we agree with the learned court below that: "The plain meaning of this [that portion of the contract providing for 3½% of the income as counsel fees] seems to be that Mr. Stinson [one of the beneficiaries] was to be allowed 3½% of the income for counsel fees as attorney for the parties of the second part (the beneficiaries), and not as attorney for the Trust Company in the trust. Who was to select the successor for Mr. Stinson? Who but the beneficiaries, as the one selected was to represent them? Now Mr. Shick [plaintiff] is the sole remaining life beneficiary. If he chooses to represent himself, we see no reason why he should not be permitted to do it. We are of the opinion that he can claim for his services 3½% of the income. True, he agreed to accept 2½%, and he was paid at this rate from 1930 to 1939. There was no consideration for this diminution in the amount paid to Mr. Shick; it was a purely voluntary gesture on his part. There is therefore no question of a novation in the

contract". Furthermore, as far as plaintiff's claim for deficiency in income of the trust, the contract specifically provides that the funds "shall always be invested in securities at the rate of not less than 5% per annum". Obviously even though the investment in the pool as originally made earned 5% or better, there was a breach of the agreement when in 1933 the interest fell below 5%. When the fund ceased to yield the income required under the contract, it should have been withdrawn from the pool and invested in securities bearing interest of at least 5% or become liable under its agreement. Therefore, the motion for judgment n. o. v. was properly overruled.

We have carefully considered the other assignments of error of both parties and find them equally without merit.

Judgments affirmed.